ELLEN GILLIAM v. REBECCA NULL ET AL.

(Case No. 1481.)

1. DESCENT — PARTITION OF COMMUNITY PROPERTY.—The law of descent announced, and the principle stated, that when the husband, after his wife's death, has conveyed by metes and bounds a portion of a tract of land in which his deceased wife owned a community interest, her heirs are entitled, on partition, to be remunerated for their share of the purchase money by having an allowance made them therefor out of his interest in the part of the tract remaining unsold.

2. HOMESTEAD.— The widow who, during the life and at the death of her husband, occupied with him a homestead on a tract of land which belonged, as community property, to the deceased husband and the wife of a former marriage, is entitled, on partition with the heirs of the first marriage, to have her deceased husband's interest set aside, and to retain on it a homestead so long as she may choose to occupy it as such. The heirs of the wife by a former marriage are entitled to so have the land partitioned that their interests, inherited from her, may be set aside to them in severalty.

3. SAME.—In such a case, while the fee of the land descended (there being no heirs by the second marriage) to the children of the first marriage, it did so subject to the homestead rights of the widow of the second marriage in the interest owned by her husband.

4. CASES APPROVED.— Clements v. Lacy, 51 Tex., 165, and Pressley's Heirs v. Robinson, 57 Tex., 453, approved.

5. HOMESTEAD.— The homestead right of a widow does not attach to the undivided interest of the children of the deceased husband inherited from his wife by a former marriage.

6. CONSTITUTION CONSTRUED.— The constitution of 1876, art. XVI, sec. 52, refers in its terms only to a descent of land to the heirs of one of the spouses occupying at the time of death. The prohibition against partition is against those who claim as heirs of the estate of the decedent, not to those claiming an interest in the land through other titles.

APPEAL from Fayette. Tried below before the Hon. L. W. Moore.

This suit was brought by Rebecca Null and others, plaintiffs in the court below, on April 28, 1881. The petition in substance set up that Richard Gilliam and his wife, Louisa, during marriage acquired a tract of two hundred and forty-two and one-half acres of land in Fayette county, and that the same was community property; that Mrs. Louisa Gilliam died, leaving four children, named Gustavus, Henry, Susan and Annie; that the two daughters subsequently died unmarried and intestate, but the two sons married and died leaving children; Gustavus leaving one child, named Richard Henry Gilliam, and Henry leaving two children, named William Henry Gilliam and Alfred Grant Gilliam; that Richard Gilliam, after the death of his wife, Louisa, sold one hundred acres to English and sixteen acres to Coyle off said tract of two hundred and forty-two and one-half acres; that Richard was dead, and Mrs. Ellen Gilliam was his surviving widow, and in possession of the unsold balance of the tract. Plaintiffs further alleged that Richard Gilliam, in selling the one hundred and sixteen acres, really intended to sell his community half interest in the two hundred and forty-two and one-half acre tract; that the plaintiff, Richard Henry Gilliam, was the owner of an undivided one-fourth of said two hundred and forty-two and one-half acres; that the other two grandchildren together owned a fourth, and the undivided balance belonged to said Coyle and English, in

proportion to their respective purchases, and that the surviving widow, Ellen Gilliam, had no interest in the land. A partition was asked for between the grandchildren and the defendants Coyle and English, and the court, in effect, was asked to adjudge that the widow, Ellen Gilliam, take nothing.

The defendants Coyle and English, on May 18, 1882, filed separate answers in which they set out their titles derived through Richard Gilliam, and also pleaded the three, five and ten years' statutes of limitation.

On May 20, 1882, Ellen Gilliam answered, setting up that she and Richard Gilliam married on September 12, 1875, and lived together until his death on December 11, 1876, at his residence on the unsold balance of the two hundred and forty-two and one-half acre tract; that for many years previous to their marriage this had been his homestead, and continued to be until his death, and that since his death, she, as his surviving widow, had claimed, used and occupied it as her homestead; that it consisted of about one hundred and fifty acres of land, and that it was the separate property of her deceased husband. She further alleged that her deceased husband moved on to and improved the land as his homestead after the death of his first wife, Louisa, putting seventy acres in cultivation, and building houses, etc., thereon, all of which were permanent and valuable improvements, worth $800; and that since the death of her husband, she, in good faith, believing it to be her homestead, had made thereon other permanent and valuable improvements, specifying the same, of the value of $800. She prayed that no partition be ordered, and that the homestead as claimed by her be confirmed unto her; but if a partition should be decreed, then that she have set apart to her as a homestead her husband's interest in the unsold land; that she be protected in the improvements made by her since his death, and for general relief.

The plaintiffs filed a supplemental petition, claiming that the two hundred and forty-two and one-half acre tract was the separate property of Gilliam's first wife by reason of having been paid for with her separate means, and also claimed rent at the rate of $280 per year from the defendant Ellen Gilliam for the use and occupation of the premises since her husband's death up to the date of trial.

The cause was tried without a jury, and judgment rendered in favor of the defendants Coyle and English for the land claimed by them respectively, and that the defendant Ellen Gilliam had no homestead rights in the land, but had a one-third life estate of $\frac{79}{500}$ in the unsold balance of the two hundred and forty-two and one-

half acres, and the same was ordered to be set aside to her in the partition and the remainder to said grandchildren. From that judgment Ellen Gilliam appealed.

The following conclusions of fact were found by the court, a jury being waived:

1st. That Richard Gilliam and Louisa Gilliam intermarried in the year 1840.

2d. That they acquired as community property, before the death of the said Louisa, the tract of two hundred and forty-two and one-half acres of land, described in plaintiffs' petition, and owned it still at the time of her death.

3d. That the said Richard and Louisa had four children, viz.: Gust, Henry, Susan and Annie Gilliam.

4th. That said Louisa died intestate in the year 1855, leaving her husband, the said Richard Gilliam, and their said four children surviving her.

5th. That after the death of the said Louisa, and before the death of said Richard, the said children Susan and Annie died intestate and without issue.

6th. That the said Gust, being at the time over twenty-one years of age, died intestate before the year 1870, leaving surviving him his wife, Rebecca Null, and a son, the plaintiff Richard Henry Gilliam (represented here by Null as next friend).

7th. That the said Henry Gilliam, being at the time over twenty-one years of age, died intestate before the year 1870, leaving surviving him his wife, Opelia Tomlin, and his two sons, the plaintiffs Wm. Henry and Alfred Grant Gilliam (also here represented by Null as next friend).

8th. That said Richard Gilliam intermarried with the defendant Ellen Gilliam on the 12th day of September, A. D. 1875; that they lived together as man and wife on part of the land in controversy as their homestead up to the date of the death of the said Richard, which occurred on the 4th day of December, 1876; that since his death, and up to the present time, the said Ellen has continued to live on the same as her homestead, claiming it as the surviving widow of said Richard.

9th. That at the time of the death of said Louisa, in 1855, she and her husband, said Richard, lived upon that part of the tract of land in controversy which lies west of Young's creek, being about one hundred and sixteen acres; that they had about fifteen acres of same cleared, fenced and in cultivation, and had erected thereon two log houses, each worth $30; that the entire improvements

then on said one hundred and sixteen acres of land were worth $100, and there were no improvements on any of the tract of two hundred and forty-two and one-half acres, except the one hundred and sixteen acres lying west of Young's creek.

10th. That the one hundred and sixteen acres, being all the land improved, and west of the creek, were sold by said Richard in 1860 to James English and T. W. Coyle.

11th. That after selling said one hundred and sixteen acres, said Richard moved on to the balance of the land lying east of the creek, and fenced and put in cultivation about seventy acres thereof, built houses and established his homestead thereon, and there lived until his death.

12th. That the improvements made by said Richard and Ellen on that part of the land east of the creek are worth $1,265, and the land, independent of improvements, is worth $2,530; that the one hundred and sixteen acres west of the creek sold by Richard is worth, independent of improvements, $1,160.

13th. That the said Richard, in selling the one hundred and sixteen acres west of the creek, intended to sell the entire land, thinking he had the right to do so, and not intending to make a partition with the children of his wife, Louisa.

14th. That the improvements put on the land east of the creek by said Richard and Ellen are not worth more than the rents of the land would be for the period it has been occupied by them.

15th. That the tracts claimed by the defendants Coyle and English have been held and occupied by them to the continuous exclusion of all others and adversely for more than ten years next before the institution of this suit, they claiming under deeds duly registered, and regularly paying the taxes thereon.

And upon the foregoing facts found by the court, it announced the following conclusions of law, to wit:

1st. That the defendants Coyle and English are protected in their title and possession by the statute of limitation pleaded by them.

2d. The said Richard owned one undivided half of the whole of said tract of two hundred and forty-two and one-half acres of land as community property; that he acquired by inheritance from his children, Susan and Annie, an undivided $\frac{13}{16}$ more thereof, making his interest in the whole be $\frac{122}{192}$ thereof. That the balance belonged equally to Gust and Henry Gilliam, being derived by them by inheritance from their mother, Louisa, and their two sisters, Susan and Annie.

3d. That the parties are entitled to partition of the entire tract of two hundred and forty-two and one-half acres, and in making the same, the interest, which would have been allowed to the said Richard had partition occurred during his life, is to be ascertained by setting aside for him so much of the unsold land as will, added to the value of the one hundred and sixteen acres heretofore sold by him to Coyle and English, be equal to his said $\frac{122}{192}$ in the whole two hundred and forty-two and one-half acre tract.

4th. That the interest owned by the said Richard in the unsold part of said land at the time of his death, and upon which he had established and fixed his homestead, being only an undivided one, and being affected by his previous sales, was not such an one as he could leave a homestead right, as such, in it to his wife upon his death, but she would only be entitled to take, not a homestead, but under the general law of inheritance a life estate in one-third of so much of the land as would have been given to Richard had a partition occurred during his life.

5th. That therefore the said Ellen will be entitled for life to $\frac{72}{506}$ of the unsold part of said tract, and the balance will belong one-half to the plaintiff. Richard Henry Gilliam, and one-half to the plaintiffs William Henry and Alfred Grant Gilliam; and it is accordingly ordered that decree be entered in favor of defendants Coyle and English, vesting the unsold part of said land in the plaintiffs absolutely, and directing partition as above indicated.

*Timmons & Brown*, for appellant.

No briefs for appellee have reached the Reporter.

WILLIE, CHIEF JUSTICE.— The land described in the petition was the community property of Richard Gilliam and his first wife, Louisa Gilliam. Upon her death, the undivided half to which she was entitled descended to the four children of the marriage, Gustavus, Henry, Susan and Annie. Upon the death of Susan and Annie unmarried and intestate, their one-fourth interest in the entire tract of land — it being one-half of their mother's half — was inherited, the one moiety by their father, Richard Gilliam, and the other by their two surviving brothers, Gustavus and Henry Gilliam. Upon the deaths of Gustavus and Henry, their entire interest went to the appellees in this cause.

Richard Gilliam having, after the death of his wife, sold all that portion of the tract lying west of Young's creek, was bound in equity to remunerate the descendants of his deceased wife for their

share of the purchase money, by allowing them an interest equivalent thereto in value out of his share of the remaining tract. And the court recognized and followed these principles in ascertaining the amount of land to which all parties were entitled, during the second marriage of Richard Gilliam, and up to the date of his death.

The exact quantity of land ascertained to belong to said Richard at that date was $\frac{237}{506}$ of the whole tract, and the wife of his second marriage having survived him, a life estate of one-third in said Richard's interest was decreed to his widow.

Divested of all questions arising out of the homestead law, this judgment is doubtless correct. The only question is, Did the court err in refusing to allow the second wife, who is appellant in this cause, a homestead right in said tract of land? She and her husband had established their homestead upon the unsold portion of the tract, and lived on it up to the date of his death. If this unsold portion had been the separate property of either Richard Gilliam or of Ellen, his wife, or the community property of their marriage, the homestead rights of his surviving wife would have continued in it after his death. But the court denied this right to her, for the reason that the land was held by her husband in common with the descendants of his wife; holding that a homestead could not be claimed in an undivided interest. In this the court erred, for the contrary has been established by the decisions of this court. Clements v. Lacy, 51 Tex., 165; Pressley's Heirs v. Robinson, 57 Tex., 453.

This last case is directly in point to the one now under consideration, and is so full upon the question that it is unnecessary to discuss it at any further length in this opinion. Of course this homestead right of Mrs. Ellen Gilliam in the undivided interest belonging to her husband at the date of his death must not interfere with the rights of his cotenants derived from the deceased Mrs. Louisa Gilliam. They are therefore entitled to have the land so divided and partitioned that their interest thus derived may be set apart to them in severalty. But the interest of the deceased Richard Gilliam must be subjected to the homestead rights of his widow, and when severed from the remainder of the tract must remain her homestead so long as she may choose to occupy it as such.

Whilst under our statute of descent and distributions the fee of the land thus set apart as a homestead descended at the death of Richard Gilliam to his heirs at law, who are among the appellees herein, yet it did so subject to the homestead rights of the widow. Const. 1876, art. XVI, sec. 52. And no partition of it can take place till she ceases to occupy it as a homestead.

But it is claimed by appellants' counsel that this homestead right is coextensive with the entire unsold portion of the land, including that undivided interest held by appellees under the deceased Louisa Gilliam, and they cite as authority the above section of our constitution and the case of Pressley's Heirs v. Robinson. Neither of these sustain such a doctrine. The case referred to expressly denied to the widow of the second marriage any homestead right in the undivided interest inherited from their mother by the children of the first marriage, and allowed a partition of the property so that such interest might be set apart to them in severalty.

The constitution refers in its terms only to a descent of the land to the heirs of one of the spouses occupying it at the time of such death as a homestead, and prohibits its partition among the heirs of such decedent during the life-time of the survivor, or as long as he or she may choose to occupy it as a homestead. In this case the decedent was Richard Gilliam, and it was to parties claiming as heirs of his estate that the partition is prohibited, not to those claiming an interest in the land through other titles. Hence the appellees were not entitled to have the undivided interest inherited by them from their father set apart to them. But that claimed by them through their deceased mother was derived by title in which Richard Gilliam had no interest at the time of his death, and was subject to a severance from the balance of the land and a partition amongst them. For the error in the judgment of the court below in denying to Mrs. Ellen Gilliam her homestead right in the land of which her husband died possessed, and requiring said interest to be partitioned, it is reversed and reformed so that the commissioners of partition appointed below, instead of setting apart to Mrs. Ellen Gilliam a tract equal in value to $\frac{79}{500}$ of the land not allotted in the judgment to English and Coyle, be required to set apart to her a tract of $\frac{237}{500}$ of the same, to be held by her as a homestead as surviving wife of Richard P. Gilliam, as long as she may live, or elect to occupy the same as a homestead, and that said tract thus apportioned to her be so laid off as to include the homestead improvements of herself and said Richard, if the same can be done without damage to the balance of the tract; and that the remainder of the land be divided in shares and proportions as provided in the judgment below.

In all other respects the judgment below is affirmed; the costs of the appeal and of this court to be paid by appellees.

JUDGMENT REFORMED.

[Opinion approved January 16, 1883.]